**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Robert E. Blackburn, Judge**

Civil Action No. 05-CV-00585-REB-MJW

RICHARD MUNDELL,

    Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS OF SAGUACHE COUNTY,
LARRY ZIMMER, individually and in his official capacity as Director of the Saguache County Department of Social Services,
ESTHER LOBATO, individually and in her official capacity as Income Maintenance Supervisor for the Saguache County Department of Social Services, and
ELIZABETH GARCIA, individually and in her official capacity as eligibility technician for the Saguache County Department of Social Services,

    Defendants.
_____

**ORDER RE: DEFENDANTS' MOTION TO DISMISS**
_____

**Blackburn, J.**

    The matter before me is defendants' Motion to Dismiss and Brief in Support [#10], filed May 31, 2005. By this motion, defendants contend that plaintiff has failed to state a claim on which relief may be granted. I have jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question). I grant the motion in part and deny it in part.

    Plaintiff, who is disabled, has been receiving Medicaid benefits since 1997. On March 17, 2003, during a yearly review of plaintiff's continuing eligibility for Medicaid benefits, defendant Elizabeth Garcia informed plaintiff that his ownership of three mobile homes and a lot put him over the $2,000 qualifying resource limit and,

therefore, that his benefits would be terminated effective March 31, 2003. The County issued a notice to that effect on March 19, and plaintiff filed a request for a hearing on March 27. Although, pursuant to applicable regulations, this request should have continued plaintiff's benefits pending the outcome of the hearing, *see* 42 C.F.R. § 431.230(a), his Medicaid benefits were, in fact, terminated as of March 31, 2003. Plaintiff's benefits were ultimately reinstated after an Administrative Law Judge found that the agency had erred in its determination. Plaintiff subsequently filed this suit, alleging that the erroneous denial of his Medicaid benefits violated his rights under the Medicaid Act, 42 U.S.C. §§ 1396-1396v, and his constitutional right of due process of law.

Defendants seek to dismiss the case, arguing that plaintiff has not asserted an enforceable right under the Medicaid Act, that his claims are barred by limitations, and that the individual defendants are entitled to qualified immunity. In ruling on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), I must determine whether the allegations set forth in the First Amended Complaint, if true, are sufficient to state a claim within the meaning of Fed.R.Civ.P. 8(a). "[T]he complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." **Conley v. Gibson,** 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); **see also Daigle v. Shell Oil Co.**, 972 F.2d 1527, 1533 (10th Cir.1992). The First Amended Complaint must be construed in the light most favorable to plaintiff, and its allegations must be taken as true. **Robinson v. City and County of Denver** 39 F.

Supp. 2d 1257, 1262-1263 (D. Colo. 1999) (citing **Daigle**, 972 F.2d at 1533). However, I need not assume that plaintiff "can prove facts which [he] has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." **Associated General Contractors of California, Inc. v. California State Council of Carpenters**, 459 U.S. 519, 526, 103 S.Ct. 897, 902, 74 L.Ed.2d 723 (1983).

Plaintiff's substantive claims are brought under the aegis of 42 U.S.C. § 1983.[1] Section 1983 confers no substantive rights of its own, *see* **Dixon v. City of Lawton, Oklahoma**, 898 F.2d 1443, 1447 (10th Cir. 1990), but rather merely provides a mechanism by which a party injured by the actions of state agents may seek redress for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws," 42 U.S.C.A. § 1983. Although this section allows a party to sue for the violation of constitutional requirements and federal statutes, *see* **Maine v. Thiboutot**, 448 U.S. 1, 4-8, 100 S.Ct. 2502, 2504-06, 65 L.Ed.2d 555 (1989), the Supreme Court has emphasized that "[i]n order to seek redress through § 1983, . . . a plaintiff must assert the violation of a federal *right*, not merely a violation of federal *law*," **Blessing v. Freestone**, 520 U.S. 329, 340, 117 S.Ct. 1353, 1359, 137 L.Ed.2d 569 (1997) (emphasis in original).

More particularly, with respect to statutes, such as the one at issue here, enacted pursuant to Congress's spending power, *see* **M.A.C. v. Betit**, 284 F.Supp.2d 1298, 1305 (D. Utah 2003), the Supreme Court has articulated the following test for

---

[1] Plaintiff's fifth claim for relief is styled as "collateral estoppel," and essentially seeks to preclude defendants from contesting the ALJ's favorable benefit determination.

determining whether the statute creates an enforceable right:

> [O]ur cases have long recognized that Congress may fix the terms on which it shall disburse federal money to the States. . . . [L]egislation enacted pursuant to the spending power is much in the nature of a contract: in return for federal funds, the States agree to comply with federally imposed conditions. The legitimacy of Congress' power to legislate under the spending power thus rests on whether the State voluntarily and knowingly accepts the terms of the "contract." There can, of course, be no knowing acceptance if a State is unaware of the conditions or is unable to ascertain what is expected of it. Accordingly, if Congress intends to impose a condition on the grant of federal moneys, it must do so unambiguously. By insisting that Congress speak with a clear voice, we enable the States to exercise their choice knowingly, cognizant of the consequences of their participation.
>
> Indeed, in those instances where Congress has intended the States to fund certain entitlements as a condition of receiving federal funds, it has proved capable of saying so explicitly. We must carefully inquire, then, whether Congress . . . imposed an obligation on the States to spend state money to fund certain rights as a condition of receiving federal moneys under the Act or whether it spoke merely in precatory terms.

***Pennhurst State School and Hospital v. Halderman***, 451 U.S. 1, 17-18, 101 S.Ct. 1531, 1539-40, 67 L.Ed.2d 694 (1981) (footnote and internal citations omitted). As the ***Pennhurst*** Court noted, "[i]n legislation enacted pursuant to the spending power, the typical remedy for state noncompliance with federally imposed conditions is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State." ***Id.***, 101 S.Ct. at 1545

Given the obvious stringency of this test, the Supreme Court has found statutes enacted pursuant to the spending power to create enforceable rights in only two

4

cases since ***Pennhurst***. ***See Wilder v. Virginia Hospital Association***, 496 U.S. 498, 512-20, 110 S.Ct. 2510, 2519-23, 110 L.Ed.2d 455 (1990); ***Wright v. City of Roanoke Redevelopment and Housing Authority***, 479 U.S. 418, 429-32,107 S.Ct. 766, 773-75, 93 L.Ed.2d 781 (1987). In its most recent pronouncement on the topic, the Court has again affirmed that nothing "short of an unambiguously conferred right [will] support a cause of action brought under § 1983." ***Gonzaga University v. Doe***, 536 U.S. 273, 283, 122 S.Ct. 2268, 2275, 153 L.Ed.2d 309 (2002).[2]

The subsections of the Medicaid Act under which plaintiff purports to sue require states receiving Medicaid funding to have in place plans pursuant to which medical assistance is "available," 42 U.S.C. § 1396a(a)(10), with "reasonable promptness," ***id***., § 1396a(a)(8). Such plans also must include "reasonable standards" for determining eligibility for benefits. ***Id***., § 1396a(a)(17).[3] The Tenth

---

[2] Although this test would have seemed relatively straightforward, the Court muddied the analytical waters somewhat in ***Blessing v. Freestone*** when it stated,

> We have traditionally looked at three factors when determining whether a particular statutory provision gives rise to a federal right. First, Congress must have intended that the provision in question benefit the plaintiff. Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence. Third, the statute must unambiguously impose a binding obligation on the States. In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

117 S.Ct. at 1359 (internal citations omitted). Apparently, this language led some federal courts to incorrectly interpret federal statutes as conferring enforceable rights so long as the plaintiff fell within the zone of interests the statute was designed to safeguard. ***See Gonzaga***, 122 S.Ct. at 2275.

[3] Although plaintiff also invokes 42 U.S.C. § 1396d(a)(15), this section merely defines "medical assistance" to include "services in an intermediate care facility for the mentally retarded,"

Circuit has never squarely addressed whether any of these sections create enforceable rights,[4] and district courts within the circuit have reached divergent results. **Compare Sanders ex rel Rayl v. Kansas Department of Social and Rehabilitation Services**, 317 F.Supp.2d 1233, 1250 (D. Kan. 2004) (finding that sections 1396a(a)(8) and 1396a(a)(17) do not create enforceable rights), **and M.A.C.**, 284 F.Supp.2d at 1307 (finding that section 1396a(a)(8) does not create enforceable rights), **with Oklahoma Chapter of the American Academy of Pediatrics (OKAAP) v. Fogarty**, 366 F.Supp. 1050, 1108-09 (N.D. Okla. 2005) (finding that section 1396a(a)(8) does create enforceable rights). Examining each of these sections individually, **see Blessing**, 117 S.Ct. at 1360 (counseling courts to consider discrete statutory provisions separately), I find that Congress did not unambiguously create enforceable rights under sections 1396a(a)(10) or 1396a(a)(17). However, I conclude that section 1396a(a)(8) does create enforceable rights.

The pivotal consideration in determining whether a statute creates enforceable rights is whether is contains "right-or duty-creating language." **Gonzaga**, 122 S.Ct. at 2275 n.3. As examples, the Supreme Court has cited Titles VI and IX, which both provide that "*No person . . . shall* be subjected to discrimination . . ." **See id**. (citing 42 U.S.C. § 2000d & 20 U.S.C. § 1681(a)) (emphasis in **Gonzaga**). Thus the statute

---

which appears to be inapplicable to the facts of this case.

[4] In **Lewis v. New Mexico Department of Health**, 261 F.3d 970 (10th Cir. 2001), a panel of the Circuit found that a claim under section 1396a(a)(8) was not "wholly insubstantial and frivolous," but declined to address the merits of whether that section created an enforceable federal right. **Id**. at 976-77.

6

must be phrased not only in mandatory terms but also "'in terms of the persons benefitted.'" *Id*. at 2275 (quoting **Cannon v. University of Chicago**, 441 U.S. 677, 690 n.13, 99 S.Ct. 1946, 1954 n.13, 60 L.Ed.2d 560 (1979)).  Section 1396a(a)(17) is not so phrased.  Instead, it is merely a directive to the states to include in their Medicaid plans reasonable standards for determining eligibility for benefits.  This section therefore does not create individual rights enforceable under section 1983.  **See Sanders**, 317 F.Supp.2d at 250.  Section 1396a(a)(10) presents only a slightly closer question.  It requires the state Medicaid plan to make benefits "available" to qualified individuals.  Although this section is mandatory and phrased in terms of the classes of persons to be benefitted, the term "available" is far too vague and amorphous to be enforceable.  **See Blessing**, 117 S.Ct. at 1359.

However, section 1396a(a)(8) provides that medical assistance under a state plan "shall be furnished with reasonable promptness to all eligible individuals."  This section speaks in terms of a defined class of persons and makes mandatory the provision of benefits to them with reasonable promptness.  It thus includes the type of rights-creating language the Supreme Court has noted is required.  Moreover, the section's reliance on a standard of reasonableness is not so vague as to be beyond the competence of the judiciary to enforce.  **See Bryson v. Shumway**, 308 F.3d 79, 89 (1st Cir. 2002).  Therefore, I conclude that section 1396a(a)(8) creates an enforceable right.

This ruling does not end the matter, however, because there is still a logical disconnect between the statutory requirement of reasonable promptness and

plaintiff's allegation that he has a right to the continuation of benefits pending the outcome of his appeal of the agency's unfavorable decision. That alleged right derives not from the text of the statute but from federal regulations interpreting the Medicaid Act, which provide, in relevant part, that when benefits are to be terminated and "the recipient requests a hearing before the date of action, the agency may not terminate or reduce services until a declaration is rendered after the hearing[.]" 42 C.F.R. § 431.230(a). In light of **Gonzaga**, with its focus on congressional intent, it appears clear that a federal regulation itself is not sufficient to create an enforceable federal right. The ultimate question is whether *Congress* intended to create such a right. If the agency's regulations interpret or enforce a congressionally created right, they may be considered in determining its scope and nature. On the other hand, when a regulation is untethered from a foundational statutory right, or if the link between the two is remote and tenuous, the regulation alone cannot create any enforceable rights. **See Harris v. James**, 127 F.3d 993, 1005-11 (11th Cir. 1997); **see also Smith v. Kirk**, 821 F.2d 980, 984 (4th Cir. 1987). The question, therefore, is whether the regulation requiring continuation of benefits pending a determination fleshes out or is, alternatively, discrete from the statutory right to a reasonably prompt determination.

I find that the statutory right and the regulation are insufficiently linked to create an enforceable right to continuation of benefits. The reasonable promptness directive speaks to the temporal aspect of the benefits determination, that is, whether the determination was made in a timely fashion. Plaintiff, however, is not claiming that

defendants unduly delayed the determination of his continuing eligibility status. Rather, the gravamen of his complaint is that defendants erroneously terminated his benefits prior to the determination of his appeal. Stated differently, plaintiff is not complaining about the timeliness of defendants' actions, but rather about their substantive consequences. The right to reasonable promptness is not sufficiently expansive to encompass a right to a continuation of benefits pending the outcome of the agency's hearing decision. For this reason, plaintiff's second cause of action should be dismissed for failure to state a cognizable claim.[5]

Although defendants appear to believe that this determination should be dispositive of all plaintiff's claims, they fail to acknowledge that his first cause of action arises not under the Social Security Act, but rather under the Due Process Clause of the Fourteenth Amendment. A recipient of direct Medicaid benefits has a protected property interest in such benefits, which may not be withdrawn without notice and an opportunity to be heard. **Goldberg v. Kelly**, 397 U.S. 254, 262, 90 S.Ct. 1011, 1017, 25 L.Ed.2d 287 (1970). Defendants have not explained how plaintiff's complaint fails to state a claim for relief under this theory, nor, given the clearly established precedent on this point, are they entitled to qualified immunity in this

---

[5] This determination pretermits the individual defendants' argument that they are entitled to qualified immunity with respect to this claim. I note, however, that it is not at all clear that defendants would be entitled to immunity if plaintiff had, in fact, pleaded a viable claim under section 1396a(a)(8), as several federal courts have found that section to create enforceable rights. **See Sabree ex rel Sabree v. Richman**, 367 F.3d 180, 192 (3rd Cir. 2004); **Bryson**, 308 F.3d at 88-89; **Westside Mothers v. Haveman**, 289 F.3d 852, 864 (6th Cir), **cert. denied**, 123 S.Ct. 618 (2002); **Doe v. Chiles**, 136 F.3d 709, 719 (11th Cir. 1998); **see also Fogarty**, 366 F.Supp.2d at 1108-09; **Martin v. Taft**, 222 F.Supp.2d 940, 978 (S.D. Ohio 2002); **Sobky v. Smoley**, 855 F.Supp. 1123, 1146-47 (E.D. Cal. 1994). **Cf. Sanders**, 317 F.Supp.2d at 1250; **M.A.C.**, 284 F.Supp.2d at 1307.

9

respect.

Nor can I agree with defendants that this claim, as well as the attendant failure to supervise claims, is barred by limitations.[6] A cause of action under section 1983 accrues "when the plaintiff knows or has reason to know of the injury that is the basis of the action." **Workman v. Jordan**, 32 F.3d 475, 482 (10th Cir. 1994), **cert. denied**, 115 S.Ct. 1357 (1995). Although defendants argue that plaintiff's cause of action accrued no later than March 19, 2003, when the agency affirmed in writing that his benefits would be terminated as of March 31, the fact remains that, having requested a hearing prior to the proposed date of termination, plaintiff could have expected his benefits to continue.[7] Therefore, his claim did not accrue until his benefits were actually terminated on March 31, 2003, making the filing of this action, on March 30, 2005, timely.

**THEREFORE, IT IS ORDERED**, as follows:

(1) That defendants' Motion to Dismiss and Brief in Support [#10], filed May 31, 2005, is **GRANTED IN PART** and **DENIED IN PART**;

(2) That the motion is **GRANTED** with respect to plaintiff's second cause of

---

[6] Claims under section 1983 are governed by the forum state's statute of limitations for personal injury actions. **Wilson v. Garcia**, 471 U.S. 261, 280, 105 S.Ct. 1938, 1949, 85 L.Ed.2d 254 (1985); **Blake v. Dickason**, 997 F.2d 749, 750 (10th Cir. 1993). Where, as in Colorado, state law provides multiple statutes of limitations for personal injury actions, the general or residual statute should be used. **Wilson**, 105 S.Ct. at 582; **Blake**, 997 F.2d at 750. The residual statute in Colorado provides a two-year statute of limitations. **See** §13-80-102(1)(j), C.R.S.

[7] This fact distinguishes this case from **Smith v. City of Enid**, 149 F.3d 1151 (10th Cir. 1998), in which the plaintiff's employment was terminated pursuant to a statute that mandated his retirement by a date certain. **See id**. at 1155-56. Defendants' remaining cases are similarly inapposite.

action, and that claim is **DISMISSED WITH PREJUDICE**; and

(3) That in all other respects, the motion is **DENIED**.

Dated September 2, 2005, at Denver, Colorado.

BY THE COURT:

s/Robert E. Blackburn
Robert E. Blackburn
United States District Judge